UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARRELL FARSZMIL,

                     Plaintiff,              **DECISION AND ORDER**

      v.
                                     1:19-CV-00390 EAW

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Darrell Farszmil ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 13).  For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 8) is denied.

**BACKGROUND**

Plaintiff protectively filed his application for DIB on September 12, 2016.  (Dkt. 4 at 23, 77).[1]  In his application, Plaintiff alleged disability beginning May 23, 2016, due to depression, bilateral knee impairments, lower lumbar spine impairment, and right ankle impairment.  (*Id.* at 23, 79).  Plaintiff's application was initially denied on December 5, 2016.  (*Id.* at 23, 91-101).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore in Buffalo, New York, on June 13, 2017.  (*Id.* at 23, 39-76).  On June 23, 2017, the ALJ issued an unfavorable decision.  (*Id.* at 20-34).  Plaintiff requested Appeals Council review; his request was denied on January 29, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-7).  This action followed.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2020. (Dkt. 4 at 25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 23, 2016, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "moderate degenerative spondylosis of the lumbar spine, anterior cruciate ligament tear, patellofemoral joint effusion and Baker's cyst in the right knee, left knee medial meniscus tear with lateral meniscus cyst, right ankle impairment, [and] adjustment disorder with depressed mood." (*Id*.). The ALJ further found that Plaintiff's medically determinable impairment of thyroid dysregulation was non-severe. (*Id*. at 26).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). The ALJ particularly considered the criteria of Listings 1.02, 1.04, and 12.04 in reaching her conclusion. (*Id*. at 26-28).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations that Plaintiff:

> should have no exposure to extreme cold. He is able to stand and/or walk for four hours total in an eight-hour day but only for 30 minutes at any one time. He is able to sit for six hours during a day but requires a sit-stand option every hour- while on task. He is able to occasionally stoop, kneel, crouch,

crawl, climb ladders, ramps, stairs and scaffolds.  He is able to understand[,] remember and carryout simple, routine work instructions.

(*Id.* at 28).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order clerk, charge account clerk, and call sender operator.  (*Id.* at 33-34).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 34).

## II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) evidence in the record demonstrates that Plaintiff is unable to maintain minimal standards of attendance, pace, and productivity in the workplace, and (2) the mental RFC is not supported by substantial evidence, because the evidence demonstrates that Plaintiff's mental limitations are greater than the limitations included in the RFC.  (*See* Dkt. 8-1 at 17-27).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.     **Plaintiff's Ability to Maintain Attendance, Pace, and Productivity**

Plaintiff first contends that he is unable to maintain minimal standards of attendance, pace, and productivity in the workplace.  (Dkt. 8-1 at 17).  In support of this argument, Plaintiff argues that the frequency he attended treatment between May 2016 through June

2017 would have resulted in his missing work three days per month; the ALJ erred in evaluating opinion evidence in the record, including opinions offered by Hongbiao Liu, M.D., the consultative examiner, Christopher Grazen, D.C., Plaintiff's chiropractor, and Stacy Michalski, PA-C, Plaintiff's treating neurology provider; and the ALJ improperly considered his activities of daily living. (*See* Dkt. 8-1 at 17-24).

The Court has reviewed the ALJ's written determination and the evidence in the record. The ALJ's conclusion that Plaintiff can engage in work consistent with the RFC, *i.e.*, a range of sedentary work, is supported by the record. Plaintiff argues that his appointment schedule would have caused him to miss work three times per month, which the vocational expert testified is more than the number of absences permitted in a competitive work environment. (Dkt. 8-1 at 18). However, Plaintiff does not explain the basis for his apparent assumption that one medical appointment would result in his missing an entire day of work. Further, the opinion evidence in the record suggests that Plaintiff can maintain attendance, pace, and productivity. Susan Santarpia, Ph.D., the consultative examiner, opined that Plaintiff can maintain attention and concentration and maintain a regular schedule. (*See* Dkt. 4 at 288). Although Sadiqir Rahman, M.D., found that Plaintiff had "poor/none" ability to "maintain regular attendance and be punctual within customary tolerances" or "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods" (*id*. at 397-98), Dr. Rahman explained that his responses were based on "subjective reports from the patient" (*id*. at 398). Accordingly, the ALJ did not credit Dr. Rahman's opinion. (*See id*. at 32 (explaining that Dr. Rahman's opinion was

entitled to "little weight" because "[t]he responses regarding the claimant's limitations were subjective and based on the claimant's self-reported limitations.")).

Plaintiff further contends that the ALJ did not properly assess the opinions offered by several medical providers in the record, including Dr. Liu, Ms. Michalski, and Dr. Grazen.  (*See* Dkt. 8-1 at 18-21, 23).  None of these medical professionals offered an opinion specifically addressing Plaintiff's functional limitations for attendance, pace, and productivity in the workplace.  (*See* Dkt. 4 at 29 (discussing Dr. Grazen's opinion that Plaintiff "was not fit to work anymore.  He was unable to sit for greater than 30 minutes, or stand/walk without changing positions.  Dr. Grazen stated the claimant had a 75% disability related to his low back.  This was a permanent issue and would only regress."); *id*. at 30 (discussing Dr. Liu's opinion that Plaintiff had moderate limitations for prolonged walking, bending, and kneeling); *id*. at 31 (discussing Ms. Michalski's opinion that Plaintiff was limited to "lifting and carrying three pounds, standing and walking for two hours and sitting less than six hours and he was unable to push or pull," and Plaintiff "had to change positions frequently and recline for four hours.")).

As explained by the ALJ, the opinion offered by Dr. Liu, which the ALJ gave "great weight," is supported not only by his program knowledge and the consistency of his opinion with the evidence as a whole, but also by an in-person examination of Plaintiff in November 2016.  (*See id*. at 30, 32; *see also id*. at 290-93).  Further, both Dr. Liu's examination findings and his opinion regarding Plaintiff's functional limitations are consistent with Plaintiff's ability to perform at least a range of sedentary work.  *See Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("[P]ostural

limitations of moderate or lesser severity are generally considered consistent with the demands of light work."); *White v. Commissioner*, No. 8:17-CV-0109(DJS), 2018 WL 2170288, at *8 (N.D.N.Y. May 10, 2018) ("[T]he moderate limitations as opined by Dr. Wassef are not inconsistent with an RFC for light work."), *aff'd*, 753 F. App'x 80 (2d Cir. 2019).  Plaintiff contends that Dr. Liu's opinion is erroneous because he did not review Plaintiff's June 2016 lumbar MRI; however, as explained above, Dr. Liu's opinion was not based entirely on his review of Plaintiff's medical history.  Rather, Dr. Liu's opinion regarding Plaintiff's functional limitations is supported by both his examination of Plaintiff and by its consistency with other evidence in the record, and the ALJ's determination that his opinion was entitled to "great weight" was proper.  *See Colbert v. Commissioner*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (opinions of state agency medical consultants may be given great weight and can constitute substantial evidence to support an ALJ's RFC determination) (collecting cases).

The ALJ also properly evaluated the opinion offered by Ms. Michalski.  The ALJ explained that Ms. Michalski's opinion was entitled to "little weight" because it was not consistent with the record as a whole, not supported by an explanation, and contradicted by Plaintiff's own testimony.  (*See* Dkt. 4 at 32-33).  As a physician's assistant, Ms. Michalski's opinion was not entitled to controlling weight.  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[N]urse practitioners and physicians' assistants are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight.").  Here, the ALJ fulfilled her obligation to weigh Ms. Michalski's opinion, and she

adequately explained why she afforded the opinion only little weight. Ms. Michalski's assessment was submitted on a check-box form, with little explanation as to how she arrived at the assessed functional limitations. (*See* Dkt. 4 at 394). This lack of explanation limits the usefulness of Ms. Michalski's assessment. *See Latham v. Colvin*, No. 15-CV-131S, 2016 WL 6067848, at *4 (W.D.N.Y. Oct. 17, 2016) ("[T]he Second Circuit has consistently held that opinions rendered on 'check-box' forms are often the ones entitled to little meaningful insight into the basis for the clinician's findings.")). Further, Ms. Michalski's opinion is contradicted by Plaintiff's own testimony that he walks around the block for at least 30 minutes, drove three hours in a car, and can mow the grass with a self-propelling push mower, with his son's help to empty the bag. (*See, e.g.*, Dkt. 4 at 55-58). The fact that the ALJ also considered Plaintiff's reports of his activities of daily living—specifically, that these activities of daily living contradicted the physical limitations assessed by Ms. Michalski—was proper. Some of the limitations included in the RFC are supported by Plaintiff's own testimony, and it was proper for the ALJ to consider this evidence in assessing the RFC. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *7 (W.D.N.Y. Aug. 9, 2017) (ALJ's conclusion that the plaintiff's description of his daily activities contradicted opinion of doctor was proper, where the ALJ also considered other evidence in the record in

discounting the doctor's opinion, including the plaintiff's  symptoms and the objective medical record.).

The ALJ also properly assessed the opinion offered by Dr. Grazen.  The ALJ gave Dr. Grazen's opinion "some weight," explaining that although the functional limitations assessed by Dr. Grazen would preclude Plaintiff from performing his prior work as a mail carrier, they were consistent with the ability to "perform at least sedentary work with restrictions."  (*Id.* at 32).  For example, Dr. Grazen's opinion that Plaintiff could not sit for more than 30 minutes at one time, needed to change  positions due to back and leg pain, should limit his bending, stooping, and twisting, and should not lift greater than ten pounds, is consistent with the RFC for a range of sedentary work, which limits Plaintiff's standing and walking, provides for a sit-stand option, and limits stooping, kneeling, crouching, and crawling.  Like Ms. Michalski, Dr. Grazen is not an acceptable medical source, and therefore his opinion is not entitled to controlling weight.  *See Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) ("As the ALJ noted . . . Dr. DeSantis is a chiropractor, and because a chiropractor is not an 'acceptable medical source,' an ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources.") (citing *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)).  The ALJ was not required to credit Dr. Grazen's statement that Plaintiff was not able to work.

Plaintiff also challenges the ALJ's consideration of his activities of daily living, because those activities are not indicative of Plaintiff's ability to perform work on a regular and continuing basis.  (Dkt. 8-1 at 21).  This argument is misplaced.  While it is true that the capability to perform activities of daily living is not inherently inconsistent with a

finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Here, the ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Dkt. 4 at 29). The ALJ identified and explained the evidence contradicting Plaintiff's claims of disability, which included medical opinion evidence and Plaintiff's reports of his daily activities:

> With regard to his activities of daily living, the medical evidence of record shows the claimant performed household chores such as snow blowing (Exhibit 9F, p. 6). He also reported that he was able to vacuum, mow the lawn and drive. He grocery shopped with his wife, and he spent his time playing video games, doing crossword puzzles and using the computer. He testified that last year he had driven his son three hours for a track meet and he stayed in a hotel for two days (testimony). He testified that he took breaks during the drive to rest.

(*Id.* at 32). It was proper for the ALJ to consider Plaintiff's ability to perform these activities when assessing his credibility. In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Commissioner.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). This is so because "[o]ne

strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.* Accordingly, the ALJ did not err by considering Plaintiff's activities of daily living. Remand is not required on this basis.

**B.    The Mental RFC**

Plaintiff next argues that the mental RFC is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ mistakenly stated that there was a gap in Plaintiff's mental health treatment between November 14, 2016 and February 14, 2017; the ALJ improperly gave "great weight" to the opinion offered by Susan Santarpia, Ph.D., the consultative examiner; and Plaintiff's testimony regarding his ability to work as a mail handler demonstrates that he was limited in his ability to interact with others in a work setting. (*See* Dkt. 8-1 at 24-26).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56. An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial

evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Dr. Santarpia, a consultative examiner, conducted an in-person examination of Plaintiff on November 28, 2016.  (Dkt. 4 at 286-89).  Dr. Santarpia's mental examination of Plaintiff was normal, including coherent and goal-directed thought processes, intact attention and concentration and recent and remote memory skills, average cognitive functioning, and fair insight and judgment.  (*Id*. at 287-88).  Dr. Santarpia opined that Plaintiff:

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits.

(*Id*. at 288).  The ALJ gave Dr. Santarpia's opinion "great weight," due to her program knowledge and because her opinion was consistent with the medical evidence as a whole. (*Id*. at 32).  The ALJ further noted that Dr. Santarpia's opinion was consistent with Plaintiff's self-reported activities of daily living, including his ability to cook, clean, do laundry, and shop, as well as socializing with friends and family and going to lunch daily. (*Id*.).  The RFC, which requires Plaintiff to understand, remember, and carry out simple,

routine work instructions, is consistent with Dr. Santarpia's examination and her opinion regarding Plaintiff's mental functional limitations.

Plaintiff argues that the RFC does not include any limitations for his ability to engage in social interaction, and this is error because Plaintiff testified that he is irritable and did not get along with some of his supervisors when he worked as a mail handler.  (Dkt. 8-1 at 26).  Plaintiff also argues that the ALJ found at step three of the sequential analysis that he had mild limitations for interacting with others.  (*Id.*).  While the ALJ is required to consider a claimant's subjective complaints, he is not required to take them at face value. *See Puglisi v. Astrue*, No. 07-CV-628S, 2008 WL 4371353, at *3 (W.D.N.Y. Sept. 17, 2008) ("An ALJ need not rely solely on a plaintiff's subjective complaints; rather, the ALJ is entitled to evaluate the record as a whole in determining whether a plaintiff's claim of disability is credible and meritorious.").  Here, the ALJ considered Plaintiff's testimony regarding his work as a mail handler (*see* Dkt. 4 at 28-29) but found that other evidence in the record indicated that Plaintiff did not require additional work-related functional limitations.  Regarding Plaintiff's suggestion that the ALJ was required, based on the step three finding, to include a limitation on social interaction in the RFC, "[i]t is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment.  A determination made at Step 3 therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis." *Jay v. Commissioner*, No. 17-CV-59S, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018).  The ALJ's conclusion that Plaintiff did not require work-related functional limitations for social interaction is supported by Dr. Santarpia's opinion, which

- 15 -

described Plaintiff as cooperative and found that he could relate adequately with others. (*See* Dkt. 4 at 287-88).

Plaintiff also argues that the ALJ erred by stating that Plaintiff had a "gap in treatment" between November 14, 2016, and February 14, 2017.  (*See* Dkt. 8-1 at 24). Specifically, Plaintiff argues that the ALJ's statement is "refuted by the evidence of record," as Plaintiff saw his counselor on November 16, 2016 and January 10, 2017, and the ALJ pointed to this gap in treatment to downplay Plaintiff's mental health symptoms. (*Id.*).  The written determination contains the following discussion:

> The record shows the claimant had a gap in treatment at the VMAC behavioral health clinic between November 14, 2016 and February 14, 2017. The claimant reported that he was doing well on medications and at times, he only takes half a dosage.  He reported improved motivation and interest in activities.   During his examination, he had appropriate eye contact, coherent thought processes and he reported he was less depressed with attention, concentration, memory, insight and judgment intact (Exhibit 9F, pp. 4-5).

(Dkt. 4 at 31-32).   Contrary to Plaintiff's implication, the ALJ's determination that Plaintiff's mental impairments were not disabling was not based on a purported "gap in treatment."   Rather, the ALJ's determination regarding Plaintiff's mental functional capacity was based on all the evidence in the record, including that Plaintiff reported improvement in his mental state and the opinion offered by Dr. Santarpia.  The Court has reviewed the records from Plaintiff's appointments on November 16, 2016 and January 10, 2017.  (*See id.* at 355-56, 368-69).  These records do not contain a useful assessment of Plaintiff's mental functional limitations.  Further, Plaintiff's mental status examinations on both dates were mostly normal (*i.e.*, Plaintiff was alert and oriented, had no significant psychomotor restlessness, delusional thought content, or perceptual disturbances, and had

organized and goal-directed thought process, as well as fair insight and judgment), save for "fleeting" eye contact and a restricted affect.  (*Id.* at 356, 369).  On January 10, 2017, Plaintiff reported that he "experienced a significant improvement when he resumed his previous medication regimen," and although he "still experience[d] intermittent depression at times," it is "manageable."  (*Id.* at 355).  In other words, these records do not discredit the ALJ's determination regarding Plaintiff's mental functional limitations.  *See Puglisi*, 2008 WL 4371353, at *3 ("The ALJ is required to set forth the essential considerations upon which his or her decision is based, with sufficient particularity to enable the reviewing court to decide whether the disability determination was supported by substantial evidence."); *see also Wacha v. Commissioner*, No. 1:19-CV-0372(WBC), 2020 WL 3402326, at *6 (W.D.N.Y. June 19, 2020) ("[T]he ALJ 'is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.'") (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983)) (alteration in original).  Accordingly, remand is not required on this basis.

In sum, the ALJ's determination is supported by substantial evidence.  The RFC is supported by specific evidence in the record, including medical opinion evidence, Plaintiff's medical records, and Plaintiff's testimony.  It is clear to the Court how the ALJ arrived at the assessed RFC, and remand is not required.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 29, 2020
        Rochester, New York